# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARIEN HOUSER, | ) Civil Action No. 2: 16-cv-1039 |
| Plaintiff, | ) |
| v. | ) Chief United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| C/O WIDENOR, SGT. DEMASKE, SGT. GEORGE, LT. SANTOYA,[1] LT. McCLURE, and LT. WILLIAMS, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[2]

Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 188). For the reasons set forth below, the motion will be granted.

### Relevant Procedural Background

This case has been the subject of prior proceedings, including decisions on five (5) motions to dismiss. ECF Nos. 109, 126, and 140. Familiarity with those prior proceedings is presumed. As a result of the prior proceedings, a number of defendants and claims have been dismissed from this litigation. Remaining are the following claims and defendants: a retaliation claim against Sgt. Demaske, Sgt. George, Lt. Williams, and Lt. McClure stemming from a December 21, 2015, search of Plaintiff's cell (Paragraph 17 of the Amended Complaint); a retaliation clam against Sgt. Demaske and C/O Widenor stemming from a December 23, 2015,

---

[1] Defendant's name is misspelled in the caption of the Amended Complaint. Throughout this Memorandum Opinion, the Court will use the spelling as reflected on Defendant's Affidavit.

[2] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 208, 209, and 211.

search of Plaintiff's cell (Paragraph 18 of the Amended Complaint); and a retaliation claim, and presumably a deliberate indifference claim, against C/O Santoyo stemming from an August 26, 2015, transport. (Paragraph 20 of Amended Complaint).

Discovery has now closed and Defendants have filed the instant Motion for Summary Judgment arguing that because no genuine dispute of material fact exists, they are entitled to judgment as a matter of law. In support of their motion, Defendants filed a brief (ECF No. 189), an appendix of record evidence (ECF No. 190), and a concise statement of undisputed material facts (ECF No. 192).

Plaintiff in response filed a response and counter statement to Defendants' Concise Statement of Undisputed Material Facts (ECF No. 216) and a "Joint Response to Defendants' Motion for Summary Judgment, Brief in Support of Defendants' Motion for Summary Judgment, Concise Statement of Undisputed Material Facts and Declarations. (ECF No. 217). The matter is fully briefed and ripe for disposition.

Relevant Factual Background

1. *Cell Searches*

In the operative Amended Complaint (ECF No. 56), Plaintiff alleges that Defendants on December 21, 2015, and then again two days later, on December 23, 2015, conducted retaliatory searches of his cell in which his cell and legal documents were destroyed and trashed.

According to Plaintiff, on December 21, 2015, a search team[3] came to his cell and conducted a retaliatory cell search in which his cell and legal materials were destroyed. (Amended Complaint, ¶ 17). Plaintiff also alleges that Defendants Demaske and George

---

[3]     From the summary judgment record, it appears that the search team on December 21, 2015, was comprised of Defendants Demaske, George, Widenor, McClure, and Williams.

threatened that they would destroy Plaintiff's cell again if he continued to file grievances and lawsuits. Then, according to the allegations in the Amended Complaint, two days later, Defendants Demaske and Widenor returned to his cell and again trashed his cell and destroyed and trashed more legal materials. (Amended Complaint, ¶ 18, ECF No. 56).

Defendants contend that the December 21, 2015, cell search was conducted as part of an annual general search that is required by DOC policy. During the search, the search team confiscated from Plaintiff's cell a number of empty cardboard legal boxes, packing tape, and two TV antennas that had been altered. Plaintiff contends that the boxes were not empty and that he had a legal property exemption for the additional boxes of legal material in his cell.[4] Further, Plaintiff contends that there is "no such thing as a annual general search" of cells, as DC-ADM 203, defines an "annual search plan" as "[a] plan to ensure that all areas <u>other</u> than inmate living quarters are searched a minimum of two times per year." (ECF No. 217-19, Exh. 23).

Defendants deny that a second search of Plaintiff's cell occurred on December 23, 2015. In support of their argument, they contend that there is no record "of a structured unit search" on that day and there is no record of Plaintiff's cell being searched on any day other than on December 21, 2015. The summary judgment record evidence reflects that Plaintiff filed a grievance on January 5, 2016, No. 605566, complaining of a cell search on December 23, 2015. Throughout the administrative grievance process, prison officials never denied that a search occurred on this date. In support of their summary judgment motion, Defendants contend that

---

[4] Plaintiff included six (6) cell content exemptions for additional boxes of legal material in his appendix, but none of the authorizations cover the relevant time period. According to the summary judgment record, if an exemption is approved, the prisoner must renew the exemption every six (6) months. *See* ECF No. 217-2, Exh. 3 (request to staff dated 6/3/2011; approval dated 6/7/11, approval for footlocker and 4 boxes in cell until the cases are disposed of); Exh. 4 (dated 12/18/13; renew date 7/2014); Exh. 5 (dated Oct. 20, 2016), Exh. 6 (approved 6/30/17), Exh. 7 (date requested 7/18/18), and Exh. 8 (authorized 7/25/18, expiration date 1/24/19).

"Plaintiff changed the date on the second grievance he filed in an attempt to have multiple grievances filed for the same allegation of having his personal items and legal material 'trashed' during the annual search" and that the responses to his grievance in error used the December 23, 2015, date. Defs' Br. at 4. Plaintiff counters that argument by producing his own Declaration (ECF No. 217-18, Exh. 22) and Declarations from six fellow inmates all stating that Houser's cell was searched on December 21, 2015 and December 23, 2015. *See* Declarations of Maurice Patterson (ECF No. 217-12, Exh. 16), Patrick Ray Haney (ECF No. 217-13, Exh. 17), Jose Busanet (ECF No. 217-14, Exh. 18), Abraham Sanchez, Jr. (ECF No. 217-15, Exh. 19), George Hitcho, Jr. (ECF No. 217-16, Exh. 20), and Daniel L. Crispell (ECF No. 217-17, Exh. 21).

In deciding this summary judgment motion, facts and the inferences should be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Therefore, for purposes of this Memorandum Opinion only, the Court finds that Plaintiff's cell was searched a second time on December 23, 2015.

2. *Transport of August 26, 2015*

In this claim, Plaintiff alleges that Defendant Santoyo in retaliation and presumably in deliberate indifference to Plaintiff's serious medical needs deterred Plaintiff from going to court on August 26, 2015, because he would not allow Plaintiff to wear his carpel tunnel wrist braces and back brace and denied him the use of his own wheelchair during the transport. Amended Complaint, ¶ 20.[5] Defendants contend that Plaintiff cannot sustain a claim for retaliation against

---

[5] The Court takes judicial notice of events which occurred on August 26, 2015, in Plaintiff's civil rights case filed at Case No. 10-0416. Plaintiff was scheduled to appear in person before Judge Donetta W. Ambrose on August 26, 2015, at 1:30 PM for a conference in Case No. 10-0416. (ECF No. 254). On August 26, 2015, at 12:36 PM, for reasons not explained on the docket, Judge Ambrose rescheduled the conference to the following day and Plaintiff was required to be present via video. (ECF No. 288). It appears that the claims raised against Defendant Santoyo in this case are related to the reason the August 26, 2015, conference before
4

Defendant Santoyo because he fails to establish that Santoyo's removal of the wrist and back braces and providing an alternative wheelchair were retaliatory acts. Defendants further contend that Plaintiff also cannot establish that Santoyo acted with deliberate indifference as he was informed by the medical department that the wrist and back braces were not required to be worn during the transport and that Santoyo followed security policy which requires that a transportation inmate use a wheelchair provided by the transport team.[6]

Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Furthermore, "summary

---

Judge Ambrose was rescheduled.

[6] Plaintiff seems to be attempting to raise a new claim against Defendant Santoyo in his brief in opposition to the motion for summary judgment by arguing that Defendant Santoyo subjected him to an improper strip search. Specifically, Plaintiff argues that he was subjected to two improper strip searches on August 26, 2015. Plaintiff contends that according to policy, prisoners are required to be searched once before they leave the institution and once upon their return. Pl's Br. at 14. Plaintiff argues that on August 26, 2015, he was first strip searched in his cell according to capital case policy. Then, Plaintiff was subjected to an improper second strip search when he arrived in intake. And, according to Plaintiff's brief, Defendant Santoyo improperly subjected Plaintiff to a third strip search. Pl's Br. at 13-14. Significantly, these allegations are not contained in the Amended Complaint. Rather, the Amended Complaint alleges only that while Plaintiff was being searched in the search room, Defendant Santoyo told Plaintiff "to bend over 'SPREAD HIS ASS SO HE COULD SEE IN HIS ASS'." Amended Complaint, at ¶ 20. No where in the Amended Complaint does Plaintiff allege Defendant Santoyo conducted an improper strip search. Plaintiff may not amend his complaint through his brief and, therefore, the additional claim set forth by Plaintiff in his brief is not properly before the Court and the Court will not address that claim.

5

judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

This standard is somewhat relaxed with respect to *pro se* litigants. Where a party is representing himself *pro se,* the complaint is to be construed liberally. A *pro se* plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS,* 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

In order to survive a motion for summary judgment on a § 1983 claim, a plaintiff must adduce evidence that the defendants acted under color of state law and that the plaintiff was deprived of a right, privilege, or immunity secured by the Constitution or federal law. *See Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir. 1994). In this case, it is not disputed that Defendants were acting under the color of state law. Therefore, the issue is whether Defendants violated Plaintiff's constitutional rights under the First and Eighth Amendments.

Discussion

A. *Plaintiff's First Amendment Retaliation Claims*

In order to state a *prima facie* case of First Amendment retaliation, a prisoner plaintiff must show: (1) the conduct in which he was engaged was constitutionally protected; (2) an adverse action by prison officials " 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;' " and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling,* 229 F.3d 220, 224-25 (3d Cir. 2000)). That an adverse action occurs following protected activity does not suffice to establish a causal link between the two events. *Lape v. Pennsylvania,* 157 F. App'x 491, 498 (3d Cir. 2005). Timing alone can suffice to establish a causal link but the timing of the retaliatory action must be "unusually suggestive" of a retaliatory motive. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). A defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity. *See Laskaris v. Thornburgh*, 733 F.2d 260, 265 (3d Cir. 1984).

Following the satisfaction of a *prima facie* case of retaliation by the plaintiff, the burden then shifts to defendants to demonstrate that "they would have made the same decision absent

the protected conduct for reasons reasonably related to [a legitimate] penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). If defendants are able to meet this burden, they are entitled to have the claim dismissed. *See Rauser,* 241 F.3d at 334. " "[C]ourts should afford deference to decisions made by prison officials, who possess the necessary expertise." *Id.*

Here, Plaintiff argues that filing grievances and lawsuits is protected by the First Amendment and that Defendants retaliated against him by searching his cell, destroying his legal materials, and deterring him from going to court by taking from him his needed carpal tunnel braces, back brace, and wheelchair. Defendants concede that Plaintiff has satisfied the first prong of a retaliation claim, as filing grievances and lawsuits is clearly protected forms of free speech under the First Amendment. Defendants contend, however, that Plaintiff has failed to satisfy the second prong of a retaliation claim - that the alleged retaliatory acts rose to the level of adverse action. In other words, that the adverse consequences he allegedly suffered would deter a person of ordinary firmness from engaging in constitutionally protected activity.

Defendants argue that Plaintiff cannot show that any of the alleged retaliatory conduct rises to the level of "adverse action" because Plaintiff has not been deterred from engaging in constitutionally protected activity, as evidenced by the countless institutional grievances he continued to file. "[A]lthough actually being deterred from engaging in First Amendment rights is not required to be proven in order to make out a retaliation claim, the fact that plaintiff was not deterred provides some evidence that can be considered to show that a reasonable prisoner of ordinary firmness would not have been deterred by the alleged [retaliatory conduct]." *Bronson v. Minnick*, No. 02-547, 2006 WL 1670212 at *4 (W.D.Pa. June 15, 2006). *See also Bartelli v. Bleich*, No. 3:04-0899, 2005 WL 2347235 at *3 (M.D.Pa. Sept. 26, 2005) ("the copiousness of

8

Plaintiff's civil rights lawsuits and complaints against prison officials belie any assertion that defendant['s] alleged threats affected Plaintiff's exercising his First Amendment Rights.").

The summary judgment record evidence in this case alone reflects a total of forty-eight (48) grievances filed by Plaintiff from August 30, 2015 (Grievance No. 584290, complaining of the events which occurred on August 26, 2015, stating that "in the eleven years of being incarcerated," no corrections staff has ever taken his wrist splints, back brace or wheelchair during a transport) (ECF No. 189-6, Exh. 7) to December 17, 2016. *See* ECF No. 189-5, Exh. 6.[7] The fact that Plaintiff has not been deterred belies any assertion that Defendants' alleged retaliatory acts would deter a person of ordinary firmness from engaging in constitutionally protected activity. Accordingly, this Court finds that Plaintiff cannot meet the second prong of his retaliation claims, and summary judgment will be entered in favor of Defendants and against Plaintiff with regard to such claims.

B. *Plaintiff's Eighth Amendment Deliberate Indifference Claim*

Related to his retaliation claim against Lt. Santoyo, Plaintiff claims that by denying him the use of his carpel tunnel braces, back brace, and the use of his own wheelchair, Lt. Santoyo was deliberately indifferent to Plaintiff's serious medical needs. The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment deliberate indifference claim, Plaintiff must show "(1) [that] the deprivation was objectively, 'sufficiently serious' such that the prison

---

[7] The undisputed summary judgment record evidence record reflects that the grievances involve a myriad of issues ranging from problems with staff-medic (4 grievances), yard (1 grievance), dental (1 grievance), health care (22 grievances), medical co-pay (1 grievance), conditions (9 grievances), legal/courts (1 grievance), problems with staff-office (4 grievances), housing / cell assignment (1 grievance), mental health (1 grievance), search (2 grievances), and food (1 grievance). (ECF No. 189-5).

9

officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a 'deliberate indifference' to his health and safety." *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. June 19, 2017) (quoting *Farmer*, 511 U.S. at 834).

The summary judgment evidence of record reflects that Defendant Santoyo contacted the Medical Department and was told that Plaintiff's braces were not medically required for transport and that Plaintiff could travel without the braces. Registered Nurse McAnany states in his Declaration that Plaintiff's carpel tunnel braces and back brace are not medically necessary and are intended to provide support during bedtime hours. They are not required during transportation and the medical department authorized the removal of the devices during transportation. ECF No. 189-11, Exh. 12, ¶¶ 4,5. The undisputed summary judgment reflects Defendant Santoyo followed the authorization provided by the medical department and informed Plaintiff that he would be transported without the braces.

Further, according to Registered Nurse McAnany the wheelchair provided by the transport team for use by Plaintiff during transportation met or exceeded all of the medical specifications that Plaintiff needed. *Id.* at ¶ 7. Even assuming that Plaintiff has serious medical needs, which the Defendants deny, the summary judgment record is devoid of any evidence demonstrating that Defendant Santoyo was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, this Court finds that after extensive discovery, the evidence produced by Plaintiff in opposition to the pending Motion for Summary Judgment fails to present a genuine issue for trial. Defendants' Motion for Summary Judgment is granted on this claim.

### III. Conclusion

For all these reasons, Defendants' Motion for Summary Judgment will be granted. Judgment will be entered in favor of Defendants and against Plaintiff. An appropriate order follows.

Dated: March 26, 2019

s/Cynthia Reed Eddy  
Cynthia Reed Eddy  
Chief United States Magistrate Judge

cc: DARIEN HOUSER  
    GL-7509  
    SCI Greene  
    175 Progress Drive  
    Waynesburg, PA 15370  
    (via U.S. First Class Mail)

    John P. Senich , Jr.  
    PA Office of Attorney General  
    (via ECF electronic notification)